**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| FEMC LLC<br>FORMERLY AXN HEAVY DUTY LLC,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | Court No. 26-03007 |

**COMPLAINT**

Plaintiff FEMC LLC formerly AXN Heavy Duty LLC ("AXN"), by and through counsel, and for its Complaint against Defendant, alleges as follows:

**ADMINISTRATIVE DETERMINATION CONTESTED**

1. This action seeks judicial review of the U.S. Department of Commerce's ("Commerce" or "the Department") final covered merchandise determination that certain trailer components, imported by AXN, are within the scope of the antidumping ("AD") and countervailing duty ("CVD") orders on certain chassis and subassemblies thereof from the People's Republic of China. *See Certain Chassis and Subassemblies Thereof From the People's Republic of China: Final Determination of Covered Merchandise Inquiry*, 91 Fed. Reg. 22494 (Dep't of Com. Apr. 27, 2026) ("Final CMI Determination").

2. Commerce's analysis of issues raised in the Final CMI Determination is contained in the Memorandum from Scot Fullerton, Acting Deputy Assistant Secretary, to Christopher Abbott, Deputy Assistant Secretary for Policy and Negotiations, *Certain Chassis and Subassemblies Thereof from the People's Republic of China: Issues and Decision Memorandum for the Final Determination of Covered Merchandise Inquiry – EAPA Inv. 7839* (Dep't of Com.

Apr. 21, 2026) ("Final CMI I&D Memorandum").

## JURISDICTION

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1581(c), as this action is commenced under Sections 516A(a)(2)(A)(ii) and (B)(vi) of the Tariff Act of 1930, as amended ("the Act"), 19 U.S.C. §§ 1516a(a)(2)(A)(ii) and (B)(vi).

## STANDING OF PLAINTIFF

4. AXN imports axles, slider boxes, landing gear, and various trailer components; these items are imported as standalone parts and are not connected to, capable of connecting to, or integrated with a chassis frame when they are imported. Yet, the Department errantly determined AXN's imports are within the scope of the AD/CVD orders on chassis from China in the Final CMI Determination. Therefore, AXN is an "interested party" within the meaning of 19 U.S.C. §§ 1516a(f)(3) and 1677(9)(A), and 28 U.S.C. § 2631(k)(1).

5. AXN participated in the administrative proceeding that is the subject of this challenge, and accordingly, has standing to commence this action pursuant to 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

## TIMELINESS OF ACTION

6. AXN commenced this action by filing a Summons on May 22, 2026. The Final CMI Determination was published in the Federal Register on April 27, 2026 and mailed (via Federal Express) on April 28, 2026. The Summons was, therefore, timely filed within 30 days of the Final CMI Determination pursuant to Section 516A(a)(2)(A)(ii) of the Act, 19 U.S.C. § 1516a(a)(2)(A)(ii), and pursuant to Rules 3(a)(2) and 6(a) of the Rules of the United States Court of International Trade ("USCIT"). AXN filed this Complaint within 30 days of the Summons. Consequently, AXN's action is timely filed pursuant to Section 516A(a)(2)(A) of the Act, 19

U.S.C. § 1516a(a)(2)(A), and USCIT Rules 3(a)(2) and 6(a).

## <u>PROCEDURAL HISTORY AND ADMINISTRATIVE PROCEEDINGS</u>

### ***The Original AD/CVD Investigations and Scope Order***

7. In 2021, the Department issued AD/CVD orders on chassis and subassemblies thereof from China. *See Certain Chassis and Subassemblies Thereof From the People's Republic of China: Antidumping Duty Order*, 86 Fed. Reg. 36093 (Dep't of Com. Jul. 8, 2021) and *Certain Chassis and Subassemblies Thereof From the People's Republic of China: Countervailing Duty Order and Amended Final Affirmative Countervailing Duty Determination*, 86 Fed. Reg. 24844 (Dep't of Com. May 10, 2021) (referred to herein collectively as "Orders").

8. Chassis are skeletal rectangular framed semi-trailers used to transport shipping cargo containers as pictured below.



*Chassis and Subassemblies from China*, Inv. No. 701-TA-657, USITC Pub. 5187 at I-11 (May 2021) (Final) ("ITC Final").

9. Subassemblies, such as a running gear assembly, connect to the chassis frame as pictured below.



ITC Final at I-19.

10. Components are the building blocks of a subassembly. The running gear assembly components are produced by third parties, not the chassis manufacturer. ITC Final at I-14. The U.S. International Trade Commission's staff prepared an illustrative diagram of how components flow into the chassis production process based on the petition and witness testimony as shown below.




ITC Final at I-14.

11. The petition targeted imports from China of chassis and completed subassemblies (unfinished chassis) ready for assembly-only or "bolt-on" operations to assemble a chassis. *See* ITC Final at 20, I-13–I-14, I-21, II-2. Because of the foregoing, petitioner was concerned that even after an order was imposed, a Chinese original equipment manufacturer ("OEM") could simply transport unassembled chassis to the United States and reassemble them at the port.

12. The subject of product coverage came up several times during the original investigations. In response, Commerce made both a preliminary and final scope determination and amended the petition scope. One issue that arose was whether the scope included components. Commerce and a number of interested parties felt the original scope language was not sufficiently clear on this point. Accordingly, Commerce revised the scope to include

language clarifying that components were not covered if entered by themselves. *See* Memorandum from Mary Kolberg, International Trade Analyst, to James Maeder, Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, *Certain Chassis and Subassemblies Thereof from the People's Republic of China: Scope Comments Preliminary Decision Memorandum* at Comment 3 (Feb. 9, 2021) ("POI Preliminary Scope Determination").

13. Another issue that arose was whether the scope was based on the physical characteristics or the end use of the imported merchandise. The Department consistently maintained that the scope was based on the merchandise's physical characteristics and not the end use. Specifically, Commerce said "the scope clearly stipulates that merchandise that is not part of a chassis frame or does not connect to a chassis frame would be considered outside the scope of these investigations." Memorandum from Alex Villanueva, Senior Director, to James Maeder, Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, Antidumping Duty and Countervailing Duty Investigations of Certain Chassis and Subassemblies Thereof from the People's Republic of China: Scope Comments Decision Memorandum for the Final Determinations at 5 (Mar. 15, 2021) ("POI Final Scope Determination").

14. The AXN-related Chinese producer of the inquiry merchandise, Guangdong Fuwa Heavy Industries Co. Ltd. ("Fuwa"), had participated in the original investigations and asked Commerce for clarification that its component axles, and landing gear legs, as provided in a September 8, 2020 and September 22, 2020 submission, were not covered. Commerce acknowledged Fuwa's comments, giving no indication it disagreed with Fuwa's scope comments and characterization of the axles and landing gear legs as components.

15. Despite acknowledging components were outside the scope and could be used in

trailers other than chassis, Commerce did not adopt a certification regime based on end use and reaffirmed that the physical characteristics of the merchandise at the time of entry govern. *See* POI Final Scope Determination at Comments 2-4.

16. Commerce also revised the scope to clarify that only landing gear assemblies were covered and not landing gear legs. *See* POI Preliminary Scope Determination at Comment 3.

***EAPA Allegations and EAPA Investigation***

17. On April 2, 2024, AXN's competitor, SAF-HOLLAND, Inc. ("SAF-HOLLAND"), filed an allegation with U.S. Customs and Border Protection ("CBP") under the Enforce and Protect Act ("EAPA"), 19 U.S.C. § 1517, alleging AXN had evaded the AD/CVD Orders. Despite SAF-HOLLAND's allegations being based primarily on the alleged end use of AXN's axle and slider box imports, CBP initiated an investigation on April 25, 2024, requested and received information from AXN, imposed interim measures on July 24, 2024, and verified AXN's responses to its requests for information.

18. AXN participated fully in CBP's investigation by responding to CBP requests and supplemental requests for information, commenting on CBP's interim measures, and participating in a successful verification of AXN's responses and post-import operations at the AXN importer facilities in the United States.

19. On March 11, 2025, following verification, CBP acknowledged that it was unable to determine whether certain AXN merchandise was covered and issued a covered merchandise referral to Commerce pursuant to 19 U.S.C. § 1517(b)(4).

***Commerce's Covered Merchandise Inquiry***

20. Commerce initiated a covered merchandise inquiry on April 3, 2025.

21. Based on CBP's referral, Commerce defined the merchandise subject to the covered merchandise inquiry as:

> (1) The axle beams imported by AXN that can be used on chassis, whether (a) incorporated into an axle assembly by AXN by adding Chinese-origin parts; (b) incorporated into an axle assembly by AXN by adding domestically (*i.e.*, U.S.) sourced parts; (c) incorporated into an axle assembly by AXN by adding a mix of Chinese-origin and domestically sourced parts; and/or (d) not incorporated into an axle assembly by AXN (*i.e.*, as imported);
> (2) The slider boxes that can be used on chassis, as imported by AXN;
> (3) Landing gear sets, as imported by AXN; and
> (4) Any merchandise imported by AXN that can be used on chassis, including, but not limited to, axle beams, slider boxes, and landing gear leg components/landing gear sets, that, even if considered individual components, were imported by AXN "with or for further assembly with a finished or unfinished chassis" by virtue of their intended sale by AXN to manufacturers for use in the production of completed trailers.

*Certain Chassis and Subassemblies Thereof From the People's Republic of China: Preliminary Determination of Covered Merchandise Inquiry*, 91 Fed. Reg. 3119, 3120 (Dep't of Com. Jan. 26, 2026) ("Preliminary CMI Determination"); *see also* Final CMI Determination at 22495.

22. On July 9, 2025, Commerce issued AXN a questionnaire to which AXN timely and fully replied.

23. Commerce issued its preliminary determination on January 21, 2026. Commerce preliminarily determined that the axle beams and landing gear – the very same ones Fuwa placed before Commerce on September 8, 2020 during the original investigations – that can be *used* on chassis, slider boxes that can be *used* on chassis, and landing gear sets that can be *used* on chassis were covered merchandise. Commerce also found that individual components were not subject. *See* Preliminary CMI Determination at 3120.

24. The Department proposed for the first time an importer-specific certification to differentiate between subject and non-subject imports based on use and not physical characteristics.

25. The Department applied the use interpretation of the Orders retroactively to cover AXN's entries.

26. On February 9, 2026, AXN submitted a case brief commenting on the legal and factual errors in Commerce's preliminary determination.

27. On April 27, 2026, Commerce issued its final determination. Commerce left its preliminary determination largely unchanged and Commerce imposed an importer-specific certification requirement for AXN. *See* Final CMI Determination at 22495.

**STATEMENT OF THE CLAIMS**

**COUNT I**

(Commerce's Unlawful Expansion of the Chinese Chassis and Subassemblies Orders to Include Components is Unsupported by Substantial Evidence)

28. Paragraphs 1 through 27 are adopted and incorporated by reference.

29. Commerce's Final CMI Determination concluded that AXN's imports of axle beams, slider boxes, and landing gear legs were covered merchandise if they could be *used* for chassis. Final CMI Determination at 22495. However, the Orders cover Chinese chassis and subassemblies thereof – not components. Petitioner did not seek relief against, and neither Commerce nor the ITC investigated, imports of Chinese components for trailers as a separate class or kind of merchandise or a separate domestic like product. *See* ITC Final at 14 ("Thus, only subassemblies and components *to be used in chassis*, as well as finished chassis themselves, are within the scope." (emphasis added)). Indeed, Commerce amended the scope to expressly provide language stating that individual components were not covered. Commerce's Final CMI Determination changes that scope language by finding components are "unfinished subassemblies."

30. Under 19 U.S.C. § 1516a(b)(1)(B)(i), the court will hold unlawful Commerce's

determination if it is found "to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *DuPont Teijin Films USA v, United States*, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting *Consol. Edison Co. v. NLRB*, 305 US 197, 229 (1938)).

31. Commerce cannot issue an interpretation that changes the scope of the order "nor interpret an order in a manner contrary to its terms." *See Duferco Steel Inc. v, United States*, 296 F.3d 1087, 1094-95 (Fed. Cir. 2002).

32. By expanding the Orders far beyond their intended scope, Commerce's Final CMI Determination is unsupported by substantial evidence and not in accordance with law.

**COUNT II**

(Commerce Insists the Orders Are Based on Physical Characteristics Yet Commerce Selectively Interprets Certain Provisions Against AXN Based on End Use)

33. Paragraphs 1 through 32 are adopted and incorporated by reference.

34. In the original AD/CVD investigations, Commerce specified that the scope was based on the physical characteristics of the merchandise at entry and not end-use. Commerce was clear about what this meant in issuing the Orders. As Commerce stated in its final scope determination during the original investigation: "the scope clearly stipulates that merchandise that is not a portion of a chassis frame or does not connect to a chassis frame would be considered outside the scope of these investigations." POI Final Scope Determination, Comment 1.

35. Based on their physical condition at the time of entry, the trailer components AXN imported were not connected to or capable of connecting to a chassis frame. *See* CBP Office of Trade On-Site Verification Report EAPA Case Number: 7839 at 6-7 (Feb. 28, 2025). Likewise, AXN's imports were not imported with finished or unfinished chassis. Nor did AXN's

imports arrive as components necessary for a subassembly that merely needed to be assembled. Therefore, despite Commerce's finding to the contrary, AXN's imports were not entered with or for further assembly with subject merchandise.

36. In spite of the above, Commerce concluded in the Final CMI Determination that AXN's imports were covered by the Orders using a rationale that indiscriminately mixed physical characteristics and end uses. Commerce's conclusion is unsupported by substantial evidence and not in accordance with law.

## COUNT III

(The Term "Unfinished Subassembly" Does Not Appear Anywhere in the Scope – Commerce Introduced it During the Covered Merchandise Inquiry)

37. Plaintiff incorporates paragraphs 1-36 above by reference.

38. Commerce reversed its own scope language exempting components and swept AXN's imports of them into the Orders by inventing the term "unfinished subassembly" and Commerce has not adequately defined what constitutes an "unfinished subassembly." Despite AXN's arguments that the scope did not contain such a term, Commerce never defined what constitutes an "unfinished subassembly," instead, Commerce merely concluded that AXN's imports met the definition.

39. As the Court of International Trade recently held, the Orders are ambiguous with respect to the meaning of "subassemblies." *See Pitts Enterprises, Inc. dba Dorsey Intermodal v. United States*, 803 F. Supp. 3d 1315, 1325, 1327 (Ct. Int'l Trade 2025), Court No. 24-00030, Slip Op. 25-133 at 21-22 (Ct. Int'l Trade Oct. 8, 2025). Commerce's Final CMI Determination does not define "subassemblies" let alone "unfinished subassemblies" leaving it unsupported by substantial evidence and not in accordance with law.

**COUNT IV**

(The Axles, Slider Boxes and Landing Gear Legs that AXN Imported Are Components)

40. Paragraphs 1 through 39 are adopted and incorporated by reference.

41. Commerce's Final CMI Determination concluded that the axle beams, slider boxes, and landing gear legs that can be *used* on a chassis are covered by the Orders because they are "unfinished subassemblies." Final CMI Determination at 22495. Even if the scope covered "unfinished subassemblies," the axles, slider boxes, and landing gear legs that AXN imported would still not qualify because the law and facts establish they are just components in the condition in which they are imported. Commerce's expansion of the scope to cover axles and slider boxes, and to re-cover landing gear legs after taking them out of the scope is unlawful and unsupported by substantial evidence.

**COUNT V**

(Commerce Did Not Provide Adequate Notice to Justify the Retroactive Imposition of AD/CVD)

42. Paragraphs 1 through 41 are adopted and incorporated by reference.

43. Because CBP could not determine whether certain AXN imports were covered by the Orders, Commerce initiated the covered merchandise inquiry on April 3, 2025. Commerce's Final CMI Determination imposes AD/CVD liability on AXN's imports retroactive to a date, *i.e.*, November 4, 2021, when AD/CVD deposits were first required under the original investigations, prior to the initiation of its covered merchandise inquiry. Final CMI Determination at 22495.

44. The Court of International Trade has ruled that the "assessment of retroactive duties . . . is… unlawful" without "adequate notice" of potential AD and/or CVD applicability. *Trans Texas Tire, LLC v. United States* 519 F. Supp. 3d 1275, 1287-88 (Ct. Int'l Trade 2021); *Trans Texas Tire*, *LLC v. United States*, 519 F. Supp. 3d 1289, 1303-05 (Ct. Int'l Trade 2021). By interpreting Orders on Chinese chassis and subassemblies in the expansive and unlawful

manner as it has, Commerce did not provide adequate notice to AXN that its imports of trailer components were unfinished subassemblies subject to the AD/CVD Orders.

**COUNT VI**

(Commerce's Certification Requirement Is Unlawful)

45. Paragraphs 1-44 are adopted and incorporated by reference.

46. Commerce imposed a certification requirement on AXN for its past and future entries. Commerce's certification is limited to three categories: 1) running gear or axle assemblies; 2) bare axles; and 3) landing gear subassemblies. Final CMI Determination at 22496-97. The certification requirement embodies most of the legal and factual infirmities as the substantive determination and is unsupported by substantial evidence and not in accordance with law.

47. In addition, Commerce's certification restricts AXN from certifying merchandise as nonsubject that Commerce's Final CMI I&D Memorandum acknowledges to be nonsubject. Commerce expressly provided a certification regime to allow AXN to distinguish subject from nonsubject merchandise given both are capable of connecting to a chassis frame. *See* Final CMI I&D Memorandum, Comment 4. Yet, despite recognizing AXN's nonsubject merchandise is capable of connecting to a chassis frame, Commerce's certification only permits AXN to certify merchandise that is not "for connection to a chassis frame." *See* Final CMI Determination at 22496. Given Commerce's repeated statements that the scope is based on physical characteristics, AXN only can certify merchandise that cannot physically connect to a chassis frame even if the merchandise was not used on a chassis. The inconsistency between Commerce's stated intention to permit AXN to certify merchandise that is capable of connecting to a chassis frame and the language of the Commerce's certification is not supported by substantial evidence and not in accordance with law.

**COUNT VII**

(Commerce Does Not Have Authority to Impose AD/CVD on Nonsubject Merchandise Just Because it is Capable of Being Used on Subject Merchandise)

48. Paragraphs 1-47 are adopted and incorporated by reference.

49. Commerce states that the scope is based on the physical characteristics of the merchandise, yet the certification requirement hinges on how the merchandise "could be used." *See*, *e.g.*, Final CMI Determination at 22495-96 ("Commerce has imposed certification requirements for AXN's entries of Chinese-origin axles, axle assemblies, slider boxes, and landing gear sets that *could be used* to produce chassis or chassis subassemblies." (emphasis added)). Whether Commerce is relying on physical characteristics or use is far from clear, which independently requires remand. However, to the extent Commerce is claiming the Orders cover any Chinese trailer subassembly or component that is compatible for use on a chassis, its determination is unsupported by substantial evidence and not in accordance with law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

(1) Hold that Commerce's Final CMI Determination is not supported by substantial evidence and is otherwise not in accordance with law; and

(2) Remand this matter to Commerce for disposition consistent with the final opinion and order of this Court; and

(3) Provide such further relief as this Court deems just and proper.

Respectfully submitted,

/s/ Emily Lawson
Emily Lawson
Edmund W. Sim
Frank Morgan
Shasha Wu
APPLETON LUFF
1700 Seventh Avenue
Suite 2100
Seattle, WA 98101
(206) 357-8522
lawson@appletonluff.com
****
1025 Connecticut Avenue, NW, Suite 1000
Washington, DC 20036
(703) 627-4276
morgan@appletonluff.com
****
Shasha Wu
99 S. Almaden Blvd., Suite 600
San Jose, CA 95113
(510) 918-2486
wu@appletonluff.com

Dated: June 17, 2026

*Counsel to FEMC LLC formerly AXN Heavy Duty LLC*